The next case, number 24-1829, United States v. Lillian Giang. At this time, would counsel for the appellant please introduce herself on the record to  Good morning and may it please the court. I'm Chrissy DeMasso and I represent Lillian Giang. I'd like to reserve two minutes for rebuttal. You may. Thank you. I'd like to focus my argument this morning on the insufficiency issue and on the good faith and employment tax jury instructions and rest on my briefs for the rest unless there are questions. The government did not introduce sufficient proof that there was a mailing or that any such mailing was reasonably foreseeable. Ms. Giang and Travelers Insurance communicated electronically. The government relies on a single mailing. It's this premium adjustment notice with the date of December 6, 2018. In order to show that this piece of paper was actually mailed and that the mailing was reasonably foreseeable, the government relies on the testimony of a fraud investigator at Travelers. This is Mr. Curreri. This investigator did not work on Abel's policy until 2020. He did not have personal knowledge of what the company sent in 2018 or how it sent things in 2018. His job was investigating premiums fraud. He did not have knowledge about He testified it was sent, right? I mean, just answer that question first. He testified. I do think it's really important to look at the language that he uses. It is different when it comes to the 2018 and then when it comes to the previous mailings. What about the 2018? Yep. So he's asked, how does Travelers send out premium adjustment notices to his customers? Then he says they're sent by regular mail. And he is then asked sort of where are they sent from? And he says they're sent from the printing office, which is in Norcross, Georgia. This piece They're sent or they come from the printing office? I have just part of the quote. I just have the printing office, which is in Norcross, Georgia. I can But he's testifying it's sent, right? In the first, when he first answers, he says sent by regular mail. So I guess what I'm getting at then is your argument seems to be talking and I think you just said it again, which is there's a lack of personal knowledge of this person. And that very well may be correct. But that seems different than the question of sufficiency. Maybe it should have been stricken for that reason. But once it's admitted without objection, why can't that be the basis for sufficiency of the evidence? I think that it, you know, anything that was admitted can be considered for sufficiency and sometimes even things that were stricken can be considered. However, I think here the key point is that he doesn't know. When you look at the letter I think with the standard that we have, we have to take the evidence as it's admitted. There wasn't an objection to him not being the right witness for this or not having personal knowledge. So we have the testimony. They're mailed. They come from our Georgia printing office. Yes. It's sufficient foundation. So we are, and I do want to be clear that we're not arguing that his testimony was inadmissible. The government does spend time saying that that piece is waived and we're not making that argument. But I do think that you have to look at all of the evidence. And here where we have the document and the government says in its closing that the But if that's not the argument, I don't understand the argument. How is that insufficient? It is evidence that you're saying was relevant and admissible and the jury could do with it. Why would that be insufficient? I think what's key here is that he's wrong. He's wrong about the information that he's giving. And it's directly contradicted by other evidence in the record. This is where the piece about what the document says is critical. So the jury could have rejected it. I think that the, first of all, this only goes to the piece about whether or not it's sent. There's still this reasonably foreseeable piece. So I do want to like kind of put a pin in that. I do think that the fact that his testimony is directly contradicted by what the letter itself says. But so the letter says it's mailed from Massachusetts, right? The letter says it's mailed from Connecticut. Sorry, Connecticut. That's all right. So when you have it and you look at it, it's sent by regular mail. They come from our printing office in Georgia, and the actual letter is sent from Connecticut. We don't, so I would not, the actual letter says it's sent. It doesn't say it's sent. There's no like postmark or anything like that. It just, the address that it has. So why does one, all right, so taking that in light is favorable to you. Why does one mistake require the jury to reject the whole thing? It wasn't Georgia. It was Connecticut. You must agree that doesn't matter. But so why can't the jury have thought, well, he doesn't know what state, but he knows it's good enough for us to accept it. It may have been sent from Georgia, even though the return address is Connecticut. That doesn't mean it wasn't sent from Georgia. I mean, I think it all goes to show that we really don't know anything about this letter, that there is this contradiction, and it means that the jury is left in a position where it does not have sufficient information in order to convict on this count. And I do think that Falcone-Nieves is a very important case in this respect. What says it wasn't sent as opposed to electronic? I mean, it doesn't matter from where it's sent. It doesn't matter if it's Georgia or Connecticut, but the discrepancy matters. But we have a letter with a return address, and somebody who says they're mailed. And he may or may not be wrong about the place, but I'll give you he's wrong about the place. Why is that not enough for a jury to say this was mailed? I think that the fact that he's wrong about the place and that he's not giving any information about how he knows this, why he knows it, what time period he knows it, puts it in that position where if the evidence is sort of equally favorable to both, that is not enough to sustain a conviction. If I could touch on reasonably foreseeable, though, really briefly. So the entire context of this relationship is electronic. Travelers and Ms. Young are communicating electronically. This is the sole document. When it comes to Mr. Carreri's testimony about the prior, the government really relies on, well, she got premium adjustment notices before, and they were mailed. Mr. Carreri does not say that previous adjustment notices were mailed. He says that he believes that three would have been sent. He says sent, not mailed. So that I think is not- What he's saying, or a jury could interpret that to mean the practice of travelers is to send these documents by mail. She's had the relationship with the company for this many years where that's what would have happened. And so that's the course of business, and so why can't the jury infer from that? That's what happened to her, and therefore she knows about it. I'm not saying it's fantastic, but we're at an unobjected to Rule 29 situation, so it's very favorable to your opponent. And I think when it comes to the standard of review, I would really, I think that Falcon Nieves is really very similar, where there was some evidence about federal funds. There was some evidence about what federal funds might have passed to this company in Puerto Rico. But there was no evidence that they did pass. And so I think looking at testimony about what would have happened or could have happened versus what did happen, and even where it's a jurisdictional element and there's sort of some evidence, but not sufficient, that's enough even on this standard for a reversal. And I do think that the- Can I jump quickly to your instructional issue? Yes. Because you're running out of time. Between those, can you focus on the good faith one first? That's where I was going to start. Thank you. I do think that the good faith instruction substantially undercut the willfulness standard. The court is telling the jurors that a defendant cannot act in good faith, nor can a defendant act in good faith, even though she holds a certain opinion or belief, if she also acted with the purpose of deceiving others. There's no requirement that this deceit be anything related to the fraud. And that- Is there testimony about her deceit generally? I see the testimony about her deceit about evading the tax laws, right? Like making cash withdrawals, et cetera. But was there other testimony that didn't relate generally to those tax issues? Say, well, I can think of a lot of different things, but- I mean, and I certainly put some hypotheticals in my brief of things that the jury could have thought that she was lying about or was- The argument is, I mean, the jury instructions say, one, tax had to be owing, two, legally, she had to know legally the taxes were owing, three, she willfully didn't pay the taxes she knew they were owing. That's sort of how the judge defines the tax crime. And then he merges mail fraud and tax into one thing and says, the burden, sorry, because willfulness is an essential element, actions taken in good faith are a complete defense. And then says, a defendant can't act in good faith even though she holds a certain belief if she also acted with the purpose of deceiving others. This is more a question for Mr. Lockhart, but I want to make sure I understand your position. It says, good faith, it seems like it's being linked to willfulness. And then you may hold a certain belief, like I didn't know I had to pay taxes, but if I acted with deception, that somehow eliminates that belief piece. And that belief piece is cheek, right? Do I understand your argument? Yes. OK. If there's no more questions, I will rest on my brief for the others until I come up for rebuttal. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record? Good morning. Donald Lockhart for the government. May it please the court, I'll pick right up with the last issue on good faith. So we have an overarching point here. First off, it's very clear that under this court's Dockery and Baroah decisions, intent to deceive is the very opposite of good faith. You start from that baseline. Those are two completely opposite mental states. They're the flip side of the coin. The question is whether that accurate statement of the law somehow subverts, waters down, nullifies the cheek willfulness standard. And we submit it doesn't because there is no such inverse relationship in the jury instruction between intent to deceive slash bad faith and willfulness. To challenge you slightly, it says because willfulness is an essential element of the defense. Now, I just want to say before I hear your response, at least there's some linking there of the ideas. They are in the same sentence as sort of working against each other. The proper way, I think, to read that language, though, is that good faith will defeat willfulness, but bad faith or intent to deceive is not enough to show willfulness. Those are not the flip sides of the same coin. So how would I know that? I mean, I might know that, but how would someone know that hearing this? Well, so if that's a proper reading as a matter of language of the jury instructions, if that reading is logically the one that makes sense, then we presume that the jurors followed it. I mean, jurors, after all, are sometimes given very complex jury instructions. The part that troubles me, I guess, and I'm more troubled about the tax than the mail fraud, but focusing on the tax, the sentence that has been highlighted says, even though someone holds a certain opinion or belief, they do not act in good faith if they act with the purpose of deceiving others. So that even though she holds a certain opinion or belief, at least to me, that's what Cheek is all about, right? You have some unreasonable belief, but if you hold it in good faith, you will not be guilty of the tax charge. Nevertheless, it says, but if you're deceiving others, that goes out the window. And that seems problematic to me in light of what Cheek is about. Well, a couple of points, Your Honor. First of all, return to the earlier point that, again, intent to deceive, bad faith are not, under these instructions, enough to show willfulness. Good faith, by contrast, is enough to defeat willfulness. But to the second point about the deceit language and whether it could have suggested to the jury that they should be looking sort of more broadly at generalized deceit in this case, we think a more natural reading of the district court's instructions here is that we're talking about the deceit that's actually alleged in the charged counts, the tax fraud count where you have deceit of the government and the mail fraud count where you have deceit of  It's not very natural. If that's the case, it would have been right there, right, for the purpose of deceiving others in perpetuating like a tax fraud or a mail fraud or something like that. But notice in addition, Your Honor, that although there is an objection on Cheek grounds to this instruction, there's no separate objection which targets the deception language and says, hey, wait a minute, Judge, this use of I'm reading it as it is. I mean, so a whole trial happened. Yeah, there was a charging document that said a bunch of things. Then a whole trial happened and I haven't read every word of it. But I know from the brief that, you know, she's doing some things that are might be dishonest and some are directly related to the charge conduct and some might be around the fringes. But by this point, the jury has heard all of them. Why should they be drawing the distinction you've just proposed? Well, because I don't think that the trial focused to any great extent on any other forms of deception. So it wouldn't be natural for the jury to take that language. So she says she's lying to her daughter. I'll just use that one that was front and center in your friend's brief. So I agree that does not go to any core element of the offenses, but she was lying about it. Yeah. Why can't the jury with this instruction say, well, she was lying to her daughter. That means it doesn't matter what her opinion or belief was. She wasn't acting in good faith. Right. Well, I guess I return to the initial point, Your Honor, which is that bad faith or intent to deceive doesn't in itself allow for a willfulness. There's one way to get out of willfulness. Exactly. But let me turn to our sort of overarching major point here, which is that any error here with respect to the tax count was harmless beyond a reasonable doubt because the evidence of willfulness was just overwhelming. Okay. I mean, I know the facts, but the defense was, well, I guess her defense was, I had a certain belief. Right. And you say, well, the evidence is clearly that she didn't have that belief. I mean, that's the point. It's absolutely the case from the trial evidence. I mean, we don't even see how a rational jury could decide the case. Otherwise, they deliberated for an hour for good reason. Remember that this is a case where the defendant has used over three million dollars in cash to pay her employees under the table while simultaneously structuring at the bank. So the bank doesn't report her. Can you explain to me the structuring timing, the when the person tells the bank employee tells her you can't do this? Is she structuring? Does she entirely stop structuring after that? Yes, she does. Remember, it's... So how do you say that's overwhelming? I mean, the response is up to that point, she might have not known you shouldn't do that. Oh, no. So our response is twofold. First of all, if you look at the actual pattern over the course of three years where she's consistently taking out just under the $10,000, sometimes multiple times a day or on adjacent days, that in itself tells you all you need to know about... Because we just presume why would you do that if you didn't know there was a $10,000 limit? Exactly. But to your point, Your Honor, in October of 2018, where she's confronted with this, then the structuring conduct stops abruptly, which we think is significant in our favor because now she knows she's being monitored and that she can't, you know, she's raising red flags. After that conversation, what do the withdrawals look like? Well, then after that conversation, then she does begin taking out over $10,000 for the first time. Remember, during the three-year period leading up to that, she does not take out over $10,000 even once, even once during that three-year period. And then boom, she has the conversation with the teller and all of a sudden she's taking out more than $10,000 because she knows at this point... What's that? I don't understand how that favors the government. It means that she's made aware of the structuring law and she's like, okay. No, because, Your Honor, the earlier evidence shows that she was already aware of the structuring of the $10,000 cap. That's why she... I get your argument, but I mean, it's hard to stand here and say that's like overwhelming. I mean, I follow you. Like, you would never take those out. You would say if you didn't, you would take out sometimes over, sometimes under, whatever, that it was always under is suggestive, you say, and I follow that. But they could just say, well, she just, that's the number she dealt in. And then all of a sudden when she's told don't do that, she doesn't. Well, frankly, we think... That's an argument. It's an argument. We think it's a preposterous one based on the evidence that of the actual structuring, including multiple times a day, $9,500, different bank branches. I mean, who does that? Her own explanation in her testimony for that is, well, it was convenient for me. What's overwhelming besides structuring? Okay. So there's that. There's the fact that there's just the gross amount of the cash that we're talking about. She says her people don't, these people don't have bank accounts. Which makes no sense because she's simultaneously paying them also by check. So that defense is completely nonsense. We have the fact that her own daughter is responsible for payroll. And to an earlier point, she's not even telling her own daughter about the cash wages that she's dealing in. And we also have her corporate tax returns. We're now, when it suits her, she's reporting higher money on those tax forms. So when you couple that with her actual testimony, which was just damning and hurt her, I mean, she just had no explanation for what she was doing here. No plausible explanation. So we think that even with respect to the tax count, if there was an error in the good faith instruction, any error was harmless beyond a reasonable doubt. In connection with the fraud count, we think this discussion is just entirely irrelevant because the cheek willfulness standard just doesn't apply in that context. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record to begin? She has a two-minute rebuttal. Chrissy D'Amaso for Lilly and Yang. I would like to make one quick comment about the good faith instruction and then sort of return to where he ended. I do think it's really important to look at the good faith instruction in terms of how jurors would read. Like, it's true. Sometimes jurors get very complex instructions, and they have to understand them. This instruction was simple, and it was wrong. And it dilutes the cheek willfulness standard, which is the most important, a critical piece of this case. Coming back to whether or not the evidence was overwhelming, it was not. We have talked about the structuring argument. And I want to point out that when you look at her withdrawals over time, it's true that she learns about the structuring rule, and then she starts to take out, or she purportedly learns about the structuring rule. Her testimony is she didn't remember learning it. She takes out more than $10,000 at a time. But she continues to make multiple withdrawals. Like, even after that, you still see multiple withdrawals. Like, her testimony is, I took out what I needed, when I needed it, where I needed it. And I think that the evidence is consistent with that. It's certainly not overwhelming evidence of structuring or overwhelming evidence of guilt here. The government had to prove that Ms. Yang knew of her duty, and that she understood her duty, and that she willfully did not follow it. And there's evidence that she was not hiding. There's evidence that there's many things that she's out in the open about. She's going to her accountant with these cash withdrawals and saying, yeah, this is what these are for. Is there confusion? Does her testimony betray confusion? Yeah, but Cheek doesn't require someone to have a reasonable misunderstanding. It requires a misunderstanding. And here, this particular good and faith instruction, which was specifically objected to, undercut the willfulness instruction. I do think it's important here to recognize the way that the mail fraud and the tax charges, which are not tax fraud, they're failure to pay over, are interconnected. That the mail fraud comes out of the failure to pay tax fraud. Because your taxes were wrong, you committed mail fraud. Let me make sure I understand that before you sit down. So the mail fraud is about defrauding travelers, right? Yes. And so there was, for that, you need to, what did you have to tell travelers that she misrepresented? What is the essence of that, that she had employees? They say that sending the- Payroll was a certain amount. Sending the tax forms, the payroll tax forms. Which they use to determine how much payroll you have. Yes. And so she's lying about that, about her amount of payroll. Does that require, I mean, she's guilty of that, whether she thinks she doesn't have to pay taxes or not, right? She's still lying about the amount of payroll. I think in the sort of unique situation of this case and the way this case was presented and instructed to the jury, where the government actually asked for there to be the same willfulness instructions on the tax counts and on the mail fraud. The government requested that. And the court gave it, right? The court clearly ties this sort of good faith piece to everything. So it's reducing the mens rea on all of the charges. And I think that here, where everything sort of stacks, I do think that the mail fraud counts, if this instruction is error, the mail fraud count also needs to be reversed. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.